UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Michael R. Nelsen and
Alexine A. Nelsen,  Case No. 08-25348-svk
    Debtors.  Chapter 7

Michael R. Nelsen and
Alexine A. Nelsen,
    Plaintiffs,  Adversary No. 08-2232
  v.

Educational Credit Management Corp.,
    Defendant.

## DECISION AND ORDER DISMISSING ADVERSARY COMPLAINT

In this adversary proceeding, the Court has been asked to determine that Alexine Nelsen's student loans should be discharged as an undue hardship under 11 U.S.C. § 523(a)(8). Mrs. Nelsen attended University of Wisconsin – Green Bay from 1987 through 1997 and received a B.A. degree in English with a minor in Women's Studies. From 2000 to 2003 she attended the University of Phoenix and earned a M.B.A. in Technology Management, and she earned another M.B.A. from University of Phoenix in December 2005 in Human Resources Management. To finance this education, she obtained student loans totaling at present $123,430.69.

In 2006, when the loans started coming due, Mrs. Nelsen requested and received a deferment. Also in 2006, she sought consolidation of her student loans. In 2007, she requested that no payments be made due to economic hardship. On May 19, 2008, she filed a Chapter 7 bankruptcy petition, with her husband, Michael Nelsen.

Mrs. Nelsen is 57 years old and is in good health. She testified that she has tried to find full-time employment, but is unable to do so. She works part-time as an instructor at Northeast Wisconsin Technical College and has done some substitute teaching. For the first three months of 2009, her monthly income has been around $1,450. Mr. Nelsen, also 57, operates a painting business. For many years the business was successful, with lucrative contracts with residential construction contractors. However, the new home construction business has soured; three of the four contractors that Mr. Nelsen once counted on for work are out of business. As a result, Mr. Nelsen's income has dropped dramatically, to around $1,000 per month. Even with the discharge of thousands of dollars in unsecured debt in their Chapter 7 case, they are unable to pay current expenses, and Mr. Nelsen is borrowing on a line of credit to support his business.

They have no health insurance and their household expenses are modest. On the other hand, they reaffirmed their obligations on two fairly new and expensive vehicles and on a mortgage on a parcel of recreational land. When asked to explain those reaffirmations, Mr. Nelsen testified that vehicles and the land are worth half of the amount of the outstanding loans, so that selling or surrendering them would simply add more debt. The Court noted that they could have chosen not to reaffirm or to rescind their reaffirmation agreements, and the deficiency balances would have been discharged.

At the August 27, 2008 hearing on the reaffirmation on the two vehicles, the Court noted the large payments and the Debtors' income, and questioned whether the Debtors would be able to make the vehicle payments without undue hardship. The Debtors stated at that hearing that Mr. Nelsen's painting business had several profitable jobs lined up, and their former attorney stated: "Business is good." When the Court continued to express skepticism, the Debtors' former attorney stated that the entire reason behind filing the bankruptcy was the student loan obligations, and that the Debtors were awaiting the deadline for filing nondischargeability complaints to see whether the student loan creditor would file such a complaint. The attorney seemed hopeful, if not confident, that the student loan obligation would be discharged with the Debtors' general discharge. The Court educated the Debtors and their attorney that it was the Debtors' obligation to file a complaint to seek a discharge of a student loan as an undue hardship, not the student loan creditors' obligation to seek a determination of nondischargeability. The Court also observed: "In the Seventh Circuit, it is very difficult to meet the undue hardship standard, if the debtor is healthy enough to work." The Court suggested that if Mr. Nelsen's painting business was so successful, perhaps a Chapter 13 plan could be used to make payments on the student loans over time. The Court reiterated no less than three times at the August 27, 2008 reaffirmation hearing that proving undue hardship of student loans was "tough," "difficult," and "a heavy burden." Even after hearing the Court's admonitions, the Debtors did not rescind their reaffirmation agreements, and now are saddled with over $1,750 per month in vehicle and recreational land payments. On September 2, 2008, they filed a Complaint to declare the student loans dischargeable as an undue hardship. Their former attorney has withdrawn from their representation, and they are proceeding *pro se*.

Although a minority of courts have adopted a "gentler" test for undue hardship, the Seventh Circuit follows a strict and narrow interpretation of the formula set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). The *Brunner* test requires a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id*. at 396. At the trial, the Court found that the Debtors met the first prong of the test, in that their present income and expenses do not permit payment of the loans.

The issue in this case turns on whether the Debtors can meet the second requirement, which has been called the "certainty of hopelessness" test. "The test is not . . . that a debtor must demonstrate that his future holds an 'absolute' certainty of hopelessness, but rather that there be additional circumstances which make it reasonably certain that the debtor's circumstances are

unlikely to improve." *Hoskins v. Educ. Credit Mgmt. Corp. (In re Hoskins),* 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003) (debtor's serious illness as shown by corroborating evidence meets test). The Debtors allege that their age and the present economy, especially as it affects the new home construction business, qualify as the additional circumstances that meet the second prong of the *Brunner* test. However, age as a determinative factor has been rejected by the Seventh Circuit Court of Appeals in *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002):

> By returning to graduate school at the age of 45 and voluntarily assuming the debt, Goulet must have believed that he had future earnings potential. *See Roberson*, 999 F.2d at 1137 (noting that "government is not twisting the arms of potential students. The decision of whether or not to borrow for a college education lies with the individual . . . ."). He has serious problems, but we are reluctant to label these pre-loan problems "additional, exceptional circumstances" so as to constitute "undue hardship" for purposes of Section 523(a)(8).

In *Goulet*, a 55-year-old debtor lived with his mother due to a drug and alcohol dependency, had a criminal record with two felonies, owed child support, and had accrued minimal past earnings. He owed approximately $76,000 in student loan debt which would have required monthly payments of around $600 until he was 76 years old. Although the bankruptcy court concluded that the debtor had no future ability to make the student loan payments, the Seventh Circuit found that these circumstances were not "insurmountable" or "exceptional" and did not meet the second prong of the *Brunner* test. The Seventh Circuit found that the debtor's academic history indicated that he had the capacity to work and could apply himself when desired. *See also Barker v. Educ. Credit Mgmt. Corp.*, 2008 U.S. Dist. LEXIS 21103, 21-22 (S.D. Ill. Mar. 18, 2008) (temporary hardships of debtor who was living with a friend, lacked transportation and paid support for four children were not insurmountable).

Similarly, in *Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 544 (4th Cir. 2008), the debtor was 62 years old and had a low-paying job. The Fourth Circuit found no "additional circumstances" outside of the normal hardships faced by bankruptcy petitioners that would render her situation hopeless. And in *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993), the Court stated that "Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" (quoting *Brunner*, 831 F.2d at 396). In this case, the slow economy leading to the downturn in Mr. Nelsen's business does not constitute exceptional circumstances, rather these are challenges faced by the vast majority of debtors in bankruptcy. While the Court has no doubt that the Debtors are suffering hardship, their circumstances do not rise to the level of "undue" hardship as defined by the Seventh Circuit.

To demonstrate that a debtor's current state of affairs is likely to persist for a significant portion of the repayment period of the student loan, a debtor must precisely identify her problems and explain how her condition will impair her ability to work in the future. *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 681 (6th Cir. 2005). Mrs. Nelsen's only "problems" are her age, and her inability to find a teaching job. These are not sufficient to meet the undue hardship test. She should seek employment in other fields, and take

advantage of the Income Contingent Repayment Program offered by the student loan creditor. This program permits a student loan debtor to pay twenty percent of the difference between his adjusted gross income and the poverty level for his family size, or the amount the debtor would pay if the debt were repaid in twelve years, whichever is less. Under the program, the monthly repayment amount is adjusted each year to reflect any changes in these factors, and the payments may also be adjusted during the year based on special circumstances. *See* 34 C.F.R. § 685.209(c)(3). At the end of the twenty five year payment period, any remaining loan balance is cancelled by the Secretary of Education. However, the amount discharged is considered taxable income. *In re Korhonen*, 296 B.R. 492, 496 (Bankr. D. Minn. 2003) (explaining the mechanics of the Income Contingent Repayment Program). Apparently, even though the Debtors would not have to make payments for at least the next two years, they rejected this program because their obligation would simply be deferred until they were over 80 years old. While this may not be palatable to the Debtors, they simply do not qualify for a hardship discharge of the student loans.

IT IS THEREFORE ORDERED: the Complaint in this Adversary Proceeding is dismissed.

Date: April 30, 2009

By the Court:

*Susan Kelley*
Susan V. Kelley
U.S. Bankruptcy Judge